**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **3:12CR117 (WWE)** |
| **v.** | : | |
| | : | **JANUARY 18, 2015** |
| **ALFRED CATINO** | : | |

**MOTION FOR RECONSIDERATION**

The pro se Defendant ALFRED CATINO, through assigned stand-by counsel, now files the following Motion For Reconsideration.

**Introductory Statement**

The motions herein presented stem from initial pretrial motions and therefore should be considered in the form of "Motions For Reconsideration."

**Motion #1**

This is a motion for reconsideration of a pretrial motion based upon a pretrial hearing held on November 25, 2013 before the Court (Eginton, Senior U.S.D.J.) moving for a <u>Franks v. Delaware</u> hearing upon the request of the pro se Defendant.

The Defendant's motion was grounded upon a claim that (1) State and Government agents, along with the Assistant United States Attorney in this matter, were not revealing the true status of their claimed "three CWs" in this matter; and that (2) the Government was misleading the Court under the facts and circumstances of this case from July 2011 (when there was no such "investigation" or "case" forming against any defendant). In court, the Government prosecutor stood her ground and the Court commented upon the question of the defendant's proof ("the two affidavits") that: "I only have one affidavit before me" (waiving it for all to see). At that moment while Mr. Catino and his stand-by attorney Mr. Riccio, were

seated in the jury box and only two seats away from Judge Eginton's law clerk, Mr. Smith. Mr. Smith, while flipping pages in his file, stated to Mr. Riccio that "I have two affidavits here."  The Court went on to deny the motion "off the cuff" and the issue was closed with no opinion as well.

<u>Legal Argument</u>

The Court (Eginton, Senior U.S.D.J.), at the time of his waiving the "one affidavit" in his hand, had only the one affidavit from Mr. Catino in regard to certain facts in this matter, and of which only shed light on one of the CWs in this case and certainly not like the affidavit of the co-defendant John Yerinides, which illuminates this whole issue on the use of the five CWs in this case.  <u>See</u> Exhibits A through E, attached hereto.  The Court deprived this Defendant of his "day in court" and his due process rights by deciding his motion without having the full presentation in front of him so that he could make a sound and correct judicial determination on this <u>Franks</u> motion request.  It clearly appears now because of the unfortunate conduct of this Court that this motion for recusal must move forward and that this Court remove himself as the judge in this matter, for under 28 U.S.C. 455(b) a judge must disqualify himself from the hearing of the motion once he becomes an interested party.  The law in part states "[h]e shall also disqualify himself in the following circumstances: (1)…personal knowledge of disputed evidentiary facts concerning the proceedings…" Furthermore, because of the actions of Judge Eginton's law clerk (Mr. Smith), it opens the field even more against this Court sitting and fairly hearing this case (28 U.S.C. 455 (b)(5) states "…or a personal within the third degree of relationship to either of them…"

The case law for reconsideration (<u>Shrader v. CSX Transportation Inc</u>., 70 F.3d 255, 257 (2d Cir. 1995)) informs us that if the defendant has "pointed to data" herein that the court

overlooked in the first instance "that might reasonably be expected to alter the conclusion reached by the Court," a hearing should be had.

It is respectfully submitted that if this Court would give this Defendant the attention as is his right, the Defendant feels confident that a hearing will be ordered in this matter (provided that this Court does not see fit to recuse himself).

The second affidavit that this Court never saw is, without a doubt, the crux to this case and all the wiretap as well. The creator of that affidavit, John Yerinides, made that affidavit agreement his penal interest all because "he" only wanted the truth to be heard in this case. He, himself, never denied his guilt in this matter. This man's testimony along would be of prodigious importance in this matter and clearly shed light on some government misconduct in this case. The evidence for a <u>Franks</u> hearing is ample in this matter with much government misconduct all through this case. Case such as <u>Franks v. Delaware</u>, 438 U.S. 154 (1978); United States v. Giordano, 416 U.S. 505 (1974); <u>United States v. Gonzalez</u>, 412 F.3d 1102 (9th Cir 2005); <u>United States v. Lilla</u>, 699 F.2d 99 (2d Cir 1983); and <u>United States v. Appolito</u>, 774 F.2d 1482 (9th Cir 1985) all support the claims made in the two affidavits herein. Wherefore, it is prayed that the Court (a) transfer the motions herein over to United States District Judge Jeffrey A. Meyer (who participated in certain parts of this case already) in the interests of justice and fair play for his consideration on these matter.

## Motion #2

This second motion is based upon the fact that (as demonstrated in pre-trial motions) that the grand jury in this matter was fed nothing less in many instances that hearsay evidence and that the Defendant was never identified as such in any manner in the proceedings. First the issue of identification was raised in a pretrial motion – admittedly not too professionally,

bur enough to inform the Court that this issue did exist and should be addressed by the Court, because this case was solely founded upon call phone conversations with names of buyers of the phone that did not relate back in any way to the Defendant's real name.  The Court, in reviewing and denying the motion to inspect ex parte and in camera, never even gave this request any attention, also and in the same regard, the motion to "inspect" and dismiss for failure to spell out one single conspiracy as opposed to four or possible six conspiracies in one.  The strong basis of this agreement rested upon "buyer and seller" type charges that was plain to see from just a reading of the charges, and the fact of mostly possession charges in the indictment itself.  A reading of the grand jury's minutes now reveals a very desperate attempt by the Government at attention of this feat…which they managed clearly before very inexperienced people in that grand jury.  The prosecutor here tried to take the elastic expansion of the due process clause way beyond its calling with her presentation i.e., the leading questions of witnesses; the clear violation of the hearsay rule; the denial of a defendant's right not to be deprived by the use of prior criminal matters; and the suppression of evidence and use of false testimony knowingly by the prosecutor.

The above claims are very seriously made against AUSA Richards for her unprofessional actions in front of that grand jury.  Only after a court reads the questioning of the two Government witnesses will it then see for itself a violation of Burger v. United States, 295 U.S. 78 (1935) that "although the Government is allows to strike hard blows…it may not strike foul ones…"  It would be wise for the Government to take heed of the works from General Santa Anna as he stated at the Alamo: "Those who forget the past are doomed to repeat it."  See United States v. Gallo, 394 F.Supp. 310 (D.Conn., May 30, 1975); United States v. Messina, 388 F.2d 393 (2d Cir 1968) (on the use of hearsay evidence).

It is respectfully submitted that the facts of this case push the boundaries of permissible Government conduct into the due process rights of the Defendant.  And, that in order to justify the dismissal of an Indictment, Government conduct must be deemed so outrageous it "shocks the conscience" or constitute the arbitrary exercise of the powers of Government.  Russell v. United States, 369 U.S. 749 (1962).  The Defendant believes he can meet this test if only the Court will reconsider and read the grand jury minutes in this case. The Defendant has waived almost three years now in jail, trying to show what he now knows was the "truth" all along in this matter, but of which no judge would look at for any reason. It's time that the courts in Connecticut understand that defendants known they have rights to pretrial motions and that the courts should take seriously their pleas for help from assigned attorneys in this matter.

What was said in Watts v. Indiana, 338 U.S. 49 (1949) by Justice Frankfurther seems to be very appropriate at this point in time: "There comes a time when we should not be ignorant as judges of what we know as men."  The Government does not wish the Defendant to succeed on any of these issues and further insist that the Defendant has "no right" to appeal these motions even though as the Defendant claims that there is much merit to these claims advanced herein.  It is time the courts clearly speak out on issues such as this, inmates in jail need the full protection of the Constitution at all stages of the proceedings and not just a "pro forma" type of representation!  This Defendant herein is 74 years of age in two months, and is literally fighting for his life to see his family once more before he passes on.

Guilt or innocence should not be the deciding factor in this matter; bur rather, the right to justice and fair play.  The Due Process Clause prohibits the Government from unfairly or

arbitrarily depriving a person of life, liberty or property.  Let the due process standards of fairness and justice prevail in this matter.

### Motion #3

This motion take the form of a motion for a <u>Franks</u> hearing based upon the fact that the Government failed to seal the very first wiretap in this case for more than 30 days after removing same from its central office at DEA Headquarters in Boston, MA, outside the territorial jurisdiction of the issuing court in the District of Connecticut, in violation of Title III Laws of the United States Code Title 18.

On the 7th and 8th days of February 2012, a Norwalk city detective (Dominic Cisero) filed affidavits in support of his application for a 30-day wiretap upon a telephone belonging to co-defendant Konstantinos Zografidis.  This telephone number 646-548-6154 became known as Target Telephone 1 or "TT-1".  The District Court on February 8, 2012 signed a 30-day order to intercept and record on TT-1.  This TT-1 number was monitored from February 8, 2012 through March 8, 2012.  Please review the affidavit of the AUSA in this matter dated March 9, 2012.  The affidavit vaguely stated on page 2 (items 2 and 3 therein) that the DEA monitored this TT-1 phone from February 8, 2012 through March 8, 2012 within a system housed in the DEA field office in Boston, MA.  In item 3 – on March 9, 2012 at 13:20 hours, DEA Special Agent Dana Mofenson removed the optical disc from the system at DEA's office in Boston containing the "original recordings" of the wire and electronic communications intercepted pursuant to the above-referenced February 8, 2012 court order.

On the same day in question, Agent Mofenson prepared the disc for sealing as required by 18 U.S.C. 2518(8)(A).  Agent Mofenson goes on to state that "the optical disc containing the recordings has been maintained bin a secure and safe location."

On the same day in question, AUSA Richards moves for a sealing order in regard to the February 8, 2012 to March 8, 2012 disc – but not in Bridgeport, CT but in Hartford, CT. The order does NOT (a) appear to have been made "in person" on the part of the prosecutor; (b) this is no indication that the evidence was ever presented to the judge signing the Order as mandated by Title III laws.  As recalled earlier, Agent Mofenson "removed," "prepared" it (the disc) for sealing and then "put it in a secure and safe location."  These procedures were all performed up in Boston, MA where the Field Division is located.  AUSA Richards does have a signed Order (allegedly) by Judge Chatigny up in Hartford, but this aloneodoes not satisfy the mandatory procedures dictated by 18 U.S.C. 2518 in regard to orders for processing and sealing of the disc after removal from the system.

Now, and on April 8, 2012 (one whole month after the removal of the disc from the system's machine), AUSA Richards makes out an application for an order for sealing in Bridgeport, the TT-1, TT-2 and TT-3 disc dated 3/9/2012 through 4/6/2012 (which was an Order to continue the 2/8/2012 to 3/8/2012 wiretap on TT-1, but of which was already taken "out of the system's machine up in Boston on 3/9/12 by Agent Mofenson and put in a "secure and safe location".)

It is thereafter claimed that the above three discs were sealed after being given to DEA Agent Wiener (three Blue-Ray DVDs containing the original Title III Intercepts of TT-1 (646-548-6154), TT-2 (917-659-7017) and TT-3 (203-616-0118) at the DEA Boston Field Division office.  At approximately 5:30pm, Agent Wiener and AUSA Richards thereafter met with United States District Judge Stefan R. Underhill in Bridgeport, CT, where Judge Underhill "received and authorized an affidavit related to the sealing of the original Title III discs

containing intercepts of TT-1 Exhibit N-15, TT-2 Exhibit N-16 and TT-3 Exhibit N-17 (see Weiner's report dated 4/24/2012 and DEA Form 6 signed by Agent Cisero on 4/24/2012).

Now, and in regard to all the above information submitted, it is respectfully submitted that (1) the 2/8/2012 to 3/8/2012 disc did not come out of the machine up in Boston until the following day (i.e., 3/9/2012) which then was prepared by Agent Mofenson and placed in an alleged "safe and secure place"; (2) that that disc did not surface again until one month later, and was sealed by Judge Underhill on 4/9/2012 and not on 3/9/2012 as the Government has claimed; and (3) that it is now upon the Government to come forth with documentary proof as to under this TT-1 disc was "really sealed."  There appears to be a very serious discrepancy as to the chain of command of the TT-1 disc because as Agent Mofenson claimed: on 3/9/2012, he removed the 2/8/2012 to 3/8/2012 disc from the Boston Field office and prepared it for sealing and placed it in a safe and secure place, and on the other hand you have Agent Wiener retrieving the same Blue-Ray DVDs containing the original Title III intercepts of TT-1, TT-2 and TT-3 at the DEA Boston Field Division, located at and in Boston, MA.  The Government must come forward with "physical proof" as to the handling of the TT01 disc from 2/8/2012 until the sealings of all three discs on 4/9/2012.  Nothing less will suffice!  In any event a formal hearing should be ordered in the event of anything less of a presentation on their part.

**The case law on the sealing issue**: 18 U.S.C. 2518(8)(A) provides that, immediately upon the expiration of a wiretap order the tapes shall be made available to the judge's issuing such order and sealed under his directions.  See United States v. Fury, 554 F.2d 522 (2d. Cir. 1977)  In a case on the very same issue of the sealing of the tapes, this very Court suppressed tapes in United States v. Rodriguez, 612 F.Supp. 718 (D. Conn., June 20, 1985) where an unexplainable delay of 14 days passed by before sealing.  Surely a delay of 30 days – as in the

case at bar – would and should merit the very same treatment by this very Court.  The Defendant will not sit here and cite the catalogue of cases on this matter for he feels one is satisfactory as it is right on point.  It has been held with pro se appellate briefs should be treated liberally and construed "to raise the strongest arguments they suggest." <u>Ortiz v. McBride</u>, 323 F.3d 191, 194 (2d Cir. 2013) and upon a lower level as well, <u>see</u> <u>Boykin v. Keycorp</u>, 521 F.3d 202, 216 (2d Cir. 2008).

**On the issue of a hearing**: A hearing that was not conducted in accordance with due process – as when a defendant is denied the opportunity to be heard upon his "fully submitted papers and exhibits" – is not a hearing with any due process protections.  A formal hearing should be ordered upon these motions for reconsideration.

WHEREFORE, it is requested that this Motion be granted.

RESPECTFULLY SUBMITTED,
ALFRED CATINO

Dated:  January 18, 2015         By: _____

FRANK J. RICCIO II
LAW OFFICES FRANK J. RICCIO LLC
923 EAST MAIN STREET
P.O. BOX 491
BRIDGEPORT CT 06601-0491
Fed Bar #CT 20980
(203) 333-6135 (phone)
(203) 333-6190 (fax)
fricciojd@aol.com (email)
www.ricciolaw.com (site)

## **CERTIFICATION**

I hereby certify that on January 18, 2015, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: _____

FRANK J. RICCIO II
LAW OFFICES FRANK J. RICCIO LLC

# Exhibit A

RECEIVED

JAN 1 2 2015

Law Offices
Frank J. Riccio

State of Rhode Island )
City of Central Falls )        SS:
                       )

<u>Affidavit</u>

I John Yerinides, Upon being duly sworn to according to law, depose and says:

I make this affidavit in support of the motion for suppression of evidence of my co-defendant, Alfred Catino.

Since my arresst in this case, Mr. Catino has been researching the evidence and over time I have helped him fill in the holes when Mr. Catino could not identify certain things or people

I have read Mr. Catino's motion in regard to the government's CW-1, CW-2, and CW-3, and can say that "yes, I am the one who has supplied all the information in regard to them, and a person by the name of 'Ted Lee'".

I am willing to testify to same anytime I am called to do so.

s/ _(signature)_

Sworn to before me June
this 3rd day of ~~May~~, 2013

_(signature)_
Notary Public: State of Rhode Island

_term expires 11-25-2015_

(Defendant's Exhibit "A")

# Exhibit B

I, Alfred F. Optino upon being duly sworn
to according to law, depose and say:

That
on the 16th day of July 2013 I had occasion to
speak to my Codefendant, Konstantinos Zografides.
I asked Mr. Zografides many questions about our
case and in particular about a person that the
Government calls "C.W.2" in this case. According
to the government, this "C.W.2 walked into this
case of his own free will to help the Government
in any way he could to make cases."

The defendant Optino asked the Codefendant Zografides
the following questions: "Do you know who C.W.2
is in this case? answer: "yes" "My Tanyer" his
name is Joe Dingyam". Question: "Did you ever
sell or buy any drugs from him"? answer: "yes"
he sold me a half a pound of Pot one time
for 2,000 dollars". Question: When was this: answer
"in July 2011, right before my birthday, he came
to see me to tell me he had alot of Pot for
sale" Question, "did you ever do or use drugs with your
lawyer? answer "yes" "we smoked Pot together"

This was the gist of our conversation together
because we met at pre trial meeting at the prison.

s/ ___Alfred F. Optino___

Sworn to before me
this __17th__ day of July 2013

___Carl Sutin___ Notary Public   term expires 11-15-20__
Notary Public: state of Rhode Island
City of Central Falls

# Exhibit C

State of Rhode Island ) SS:
City of Central Falls )

<u>Affidavit</u>

To Assistant United States
Attorney Mrs. V. Richards

I am writing
to you in regard to a matter that
came up in the District Court on the
12th day of November 2014, in regard to
a Co-defendant Mr Zografidis in front
of U.S. Magistrate Fitzsimmons, in regard
to a "wiretap in January of 2012" when in
fact, "no legal" wiretap was placed on either
of Zografidis Cell Phones until February 8 2012
and March 8, 2012. I understand that you
on occasion had asked the first assigned
attorney to Mr Zografidis about "a phone
call" between himself & Mr Catiro in
the month of January 2012" it seems you
wanted to know what this phone call
was all about and that Mr Zografidis
lawyer should' ask him about it and report
back to you with the result of that
inquiry.

now, and on the 12th day of November 2014,
in the District Court, in front of U.S. Magistrate
Mrs Fitzsimmons, it seems during a
discussion of this very same matter about

(1)

herein, (supra), the Court Mrs Fitzsimmons, ordered you (and or Mr Runowicz) into her Chambers on this matter after Mr Zografidis "made it very clear to Mrs Kate Fitzsimmons why he wished to have a new attorney appointed and also to be able to withdraw his plea as well in this Case"

My question to you at this time is "do you possess any records, notes, or information that is in regard to the above claims of Mr Zografidis and if so would you like to call me in, so that we could discuss this matter and perhaps resolve it before we get into more serious paper work on this matter - because I'm sure you realize that whatever went on in Chambers, the defense has a "right to know about it"...,"

I remain, as always

Respectfully
Alfred F. Gatino

Sworn to this 18th day of November 2014.
Pearl Slavson Notary Public   term expires 10-25-2015
Notary Public: State of Rhode Island
City of Central Falls

(2)

# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :

                                :

v.                             :       3:12-cr-00117-WWE

                                :

PAPADAKOS et al.           :

*[handwritten annotation: Court did not decide motion — deny it as moot for appeal(?)]*

## MEMORANDUM OF DECISION ON DEFENDANT ALFRED CATINO'S MOTIONS FOR RECONSIDERATION AND ARTICULATION

On November 25, 2013, after extensive briefing, the Court held oral argument on defendants' various motions to suppress the Title III wiretaps in this case. The Court denied the motions [Docs. # 273, 292, 294, 296, 298, 449, 473] at the close of the hearing. Two months later, on January 28 and 29, 2014, defendant Catino filed "supplementary" suppression memoranda in further support of his initial motion to suppress the wiretaps. The Government responded to Catino's supplementary suppression memoranda on January 30, 2014 [Doc. # 726], and the Court adhered to its decision to deny Catino's motion to suppress on March 25, 2014 [Doc. # 761].

Catino has moved (1) for reconsideration of the Court's decision to deny wiretap suppression in light of recent applicable decisions by the United States Supreme Court, and (2) for articulation of the Court's reasoning for adhering to its decision to deny wiretap suppression in spite of Catino's supplementary suppression memoranda.

**Reconsideration**  *[handwritten: asked for Reipar ment not reconsideration]*

The United States Supreme Court granted *certiorari* in  United States v. Wurie, 728 F.3d 1 (1st Cir. 2013) and People v. Riley, 2013 WL 475242 (Cal. 4th Dist. Court of Appeal Feb. 8, 2013) to consider the constitutionality of searching a cellular telephone incident to arrest. Both cases involved searches of a defendant's cell phone without any warrant, and the lower courts

reached opposite conclusions (Riley found such searches constitutional, but Wurie held them to be unconstitutional).

Catino, through his motion for reconsideration, has requested that the Court postpone any final decision on suppression of his cell phone contents until the Supreme Court rules upon the constitutionality of such searches. The Government contends that regardless of what the Supreme Court decides on the issue of cell phone searches incident to arrest, suppression of the wiretap evidence in this case would not be appropriate. The Court agrees.

In the instant case, agents went to Catino's house after intercepting calls in which Catino discussed the destruction of evidence. There, agents explained to Catino that they were in the process of obtaining a search warrant. Catino alleges that agents examined his phone prior to receiving the warrant, but the Government responds that, within hours of the initial examination, this Court issued a warrant authorizing the search and seizure of Catino's cell phone and its contents without any reference to information obtained from the agents' initial, minimal search. Thus, as outlined in the Government's initial opposition, the agents would have inevitably discovered the contents of Catino's telephone. See Nix v. Williams, 467 U.S. 431, 444 (1984) ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received.").

Assuming *arguendo* that the search of defendant's cell phone was unconstitutional and without good faith – points with which the Government strongly disagrees – the remedy would be suppression of the physical telephone and the data on it, not the suppression of the wiretap evidence. Indeed, the wiretap evidence was obtained as a result of separate affidavits and

findings of probable cause wholly unrelated to Catino's arrest.

As Catino has not demonstrated controlling decisions or data that might reasonably be expected to alter the Court's decision to deny suppression of the wiretaps in this case, his motion for reconsideration will be denied. See Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995).

### Articulation

Catino has requested that the Court articulate its reasons for adhering to its decision to deny suppression of the wiretaps in this case after considering Catino's supplemental memoranda. In his supplemental memoranda, Catino argues that (1) Senior District Judge Charles Haight, Jr. Lacked the territorial jurisdiction to issue the five orders authorizing wire interceptions, (2) the cell phones at issue were not located in Connecticut, and (3) DEA agents did not have authority to obtain Global Positioning System ("GPS") data from the target telephones. None of Catino's arguments have merit.

First, Catino contends that the DEA improperly located its listening post in Boston, Massachusetts. However, the Government has demonstrated through affidavit that the DEA monitored the intercepted communications in Bridgeport, Connecticut.

The Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2521, governs the installation and use of wiretaps. Section 2518(3) provides that a "judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting . . ." 18 U.S.C. 2518(3). The Second Circuit has held that "for purposes of § 2518(3)'s jurisdictional requirement, a communication is intercepted not only where the tapped telephone is

(P. 4)

Judge's order

Clause Placed Upon the Files
Rights of Book Recommendations
(Item 3):

"The ___ is hould be
prohibited from selling (softwares)
to ___ book class into this
software so it can gain access
to every ___ Communications and
___."

(See: USP Today December 19, 2013 "The Nation News").

located, but also where the contents of the redirected communication are first to be heard." U.S.
v. Rodriguez, 968 F. 2d 130, 136 (2d Cir. 1992).  Here, defendants' communications were first

heard at the Government's listening post in Bridgeport, Connecticut.  Accordingly, the Court's

exercise of jurisdiction was proper.

Second, Catino argues that targeted cell phones were improperly located outside of

Connecticut.  The government responds that Catino was surveilled on numerous occasions using

the target telephones in Danbury, Connecticut.  Moreover, Judge Haight's orders specifically

provided that, "in the event that the Target Telephones are transferred outside the territorial

jurisdiction of this Court, interceptions may continue to take place in the District of Connecticut

where wire and electronic interceptions will be first heard/or read and minimized."  Thus,

interception of Catino's cell phone was appropriate regardless of its location.

Third, as stated in its prior submissions and at oral argument, the Government applied for

and received orders authorizing receipt of GPS data from the target telephones' telephone

carriers.  In its applications, which were included in the wiretap applications and which were

provided to the defendant in discovery more than a year ago, the Government established

probable cause for the orders.  Based on these applications, the Court authorized DEA agents to

receive the GPS data from the telephone carriers.  It was only pursuant to these orders that the

Government retrieved GPS data on the target telephones.  Accordingly, the DEA agents had

authority to obtain such data.

## CONCLUSION

For the foregoing reasons, Catino's motion for reconsideration [Doc. # 767] is DENIED.

Dated this 2nd day of June, 2014, at Bridgeport, Connecticut.


_____/s/Warren W. Eginton_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE

# Exhibit E

ELLIOT R. WARREN

ATTORNEY AT LAW

--------------------------

830 POST ROAD EAST
SUITE 214
WESTPORT, CT 06880
(203) 226-1716

ALSO ADMITTED TO PRACTICE  IN
THE DISTRICT OF COLUMBIA

FAX: (203) 226-6445
ewarrenlaw@aol.com
www.ewarrenlaw.com

October 24, 2014

**ATTORNEY CLIENT PRIVILEGE**
Demetrios Papadakos
Donald Wyatt Detention Center
950 High Street
Central Falls, RI 02863

Re: Criminal Matter - Financial Affidavit

Dear Demetrios,

This is a follow up to our telephone call of yesterday.

1. You asked if I could send you the report of the surveillance of you in New York on May 8, 2012 related to your motion to suppress evidence found in the car stop. I cannot send the actual report. I have created a summary and enclose it for you.

2. You also questioned me on the Alleye motion you gave me when we last met. I am very familiar with the case, as well as motions filed before Connecticut judges over the past year. This motion is similar to ones that have been uniformly denied. I will be happy to discuss it in detail when I come up to Wyatt in the next week or so. If you want to talk about this before then, you can call me.

Very truly yours,

Elliot R. Warren

ERW.bl
Enc.

At aproximately 8:30 p.m., TFO Roscoe observed a black Honda CR-V, CT registration 133WNR leaving 95 Woodrow Avenue Bridgeport, CT. A check with CT DMV revealed the vehicle to be a black 2008 Honda CR-V registered to Stravroula SKIADAS, 27 Newtown Avenue, Danbury, CT. TFO Roscoe followed the Honda onto RT 8/25 connector where TFO Cisero and DET Blake joined the surveillance.

At approximately 9:30 p.m., TFO Cisero observed the Honda arrive on Spring Street, in the area of Mott Street, in Manhattan, NY. Vasiliki PAPADAKOS, a.k.a "Vasso" exited the drivers side and Demetrios PAPADAKOS, a.k.a. "Jimmy the Greek", exited the passenger side. Both PAPADAKOS' met with two unknown white males in their 40's. TFO Lofton observed one of the unknown males, approximately 5' 10" tall, average build, unknown hair, wearing a sweat suit, exit 21 Spring Street holding a brown purse like bag. The unknown male took what appeared to be a white box from the brown purse, and handed the white box to Demetrios PAPADAKOS. All four

(

individuals continued to talk on the sidewalk next to the Honda. Reference sessions 934, 937, and 945 on TT3.

At approximately 10:05 p.m., TFO Lofton observed Demetrios PAPADAKOS and the two unknown males enter Lombardi's Pizza place on the corner of Spring Street and Mott Street. Vasiliki PAPADAKOS remained in the Honda.

At approximately 10:50 p.m., Vasiliki PAPADAKOS exited the Honda and went into Lombardi's Pizza. A few minutes later, Vasiliki and Demetrios PAPADAKOS, along with the two unknown males exited Lombardi's.

At approximately 11:00 p.m., TFO Lofton observed Vasiliki PAPADAKOS enter the drivers seat and Demetrios PAPADAKOS enter the passenger seat of the Honda, and the vehicle left the area with surveillance units following.

At approximately 11:54 p.m., as surveillance units continued to follow the Honda CR-V, TFO Wiener coordinated with the Connecticut State Police to conduct a motor vehicle stop, reference CSP case number 1200265164. Demetrios and Vasiliki PAPADAKOS were subsequently arrested and found to be in possession of $2,940.00 US Currency, a small amount of cocaine, and over 400 prescription pills, of which 388 of the pills were blue and were located in a white eye glass case. All evidence was initially seized by the CSP who maintained custody, until transferring to members of the BRO.   The following non-drug evidence was seized:

- $2,940.00 of U.S. Currency, exhibit N-69

- Three cellphones, one red Samsung, one blue Samsung, and one black Motorola, exhibit N-70

- DVD of CSP traffic stop case number 1200265164 on 5-08-2012, exhibit N-71

- 2008 Honda CR-V, exhibit N-72

On May 9, 2012 at approximately 2:00 p.m., TFO Lofton and TFO Martinez arrested Demetrios PAPADAKOS and Vasiliki PAPADAKOS on Federal Complaints at the Danbury, CT court house where they were being presented