# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **3:12CR117 (WWE)** |
| **v.** | : | |
| | : | **JULY 21, 2015** |
| **ALFRED CATINO** | : | |

## SUPPLEMENT TO
## MOTION FOR RECONSIDERATION

The Defendant, ALFRED CATINO, through undersigned stand-by counsel, presents the following supplemental material after the July 14, 2015 court hearing on this Defendant's Motion For Reconsideration.

### INTRODUCTORY STATEMENT

This is a reply to the Government's reply for, and in regard to: a suppression of wiretap evidence and other motions as well which the Government has failed to respond to.

On the 14th day of July, 2015, a hearing was held before the Court (Eginton, U.S.D.J.), and before the Court were three (3) separate motions pursuant to its Motion For Reconsideration: (a) a motion for recusal – due to the fact that the Court had become a "party" to the proceedings in violation of 18 U.S.C. § 445(b); (b) that the prior denial of a motion for a <u>Franks</u> hearing was incorrectly decided by the Court because of the fact that the hearing Court never had all of the Defendant-Petitioner's motion papers evidence before it to make a "fair and just" decision upon its presentation before denying it (as the Court did) off the cuff and without any opinion; and (c) that the failure of the Government to seal a wiretap tape in this case for over thirty (30) days warranted suppression in light of both statutory law and case law as well.

## Answering the Government's Opposition

The Government claims that the Defendant Catino is not entitled to a <u>Franks</u> hearing because he has not shown in prior submissions that the "Yerinides affidavit" (and the only basis for Catino's allegations) lacked substance to justify a <u>Franks</u> hearing.

In reply to the above (on pages 1 and 2 of the Government's opposition) let the Government once again be put on notice that it is the false and misleading statements and testimony of Detective Dominick Cisero that is being called into play here, and to a certain degree with the extended help of the Government's prosecutors as well as will be shown herein, *supra*.

First, the Government attorney, Ms. Richards, is correct when she states that "what is contained in the Yerinides affidavit is, in sum and substance, the accusatory acts being claims – but not Catino's only proof that "rise or fall on the strength of the Yerinides affidavit (see: the affidavit of the Defendant Catino herein under Exhibit A which the Government has failed to mention in its reply).Worthy to note, Det. Cisero in his affidavit claims that CW-2 ("Joe Dimyan") was a "pot dealer" himself. This affidavit was also before this Court for his consideration upon the <u>Franks</u> hearing motion.

Second, the Government seems to be missing the point in regard to the Defendant's claim in regard to the action of Det. Cisero in this case, which are that he, on many occasions, has been building "his case" upon an "unsatisfactory foundation" of which the Government rightly states in its reply that if the wiretap affidavit "contains a false statement or omission and the defendant makes a substantial preliminary showing (1) that the false statement or omission was made knowingly and intentionally, or with reckless disregard for the truth", then he would be entitled to a <u>Franks</u> hearing. The falsehoods of Det. Cisero's statements can best

be shown when you consider the strength of the accusations made in all of the Defendant Catino's offerings backed up by the two affidavits offered in support of the claims. The Government is evading the fact that Det. Cisero was "swearing to facts" in his affidavits that were not true, and very damaging and deceitful! Examples:

(1) When Det. Cisero claimed that "CW-1" was the very same CW-1 he claims purchased drugs from Yerinides or August 6 and 16 of 2012, was he not <u>lying</u> to the wiretap court in his affidavits to obtain the wiretap? Surely you know that the original CW-1 was and is Ted Lee starting back in July of 2011 and <u>not</u> Sammy Attica a/k/a "Sammy The Egyptian" as Det. Cisero claimed. Yerinides made that clear in putting Ted Lee's name in his affidavit (see Exhibit C herein). Mr. Yerinides certainly knows who he is doing business with.

(2) When Det. Cisero claims that in regard to CW-3 (Chris Anderson) (and <u>not</u> the other other CW-3 (Demitri Karipidis)) was buying 6 to 8 grams a week from the defendant Zografidis, was not he <u>lying</u> once again – and also, consider the fact that the Government was using two different people at times representing them to be "one and the same person"?! (See Catino's original motion papers on file in this matter.) Chris Anderson could never afford "6 to 8 grams a week" that Zografidis makes clear as well. The Government in a footnote on page 3 in their reply makes note that in their view CW-1 and CW-3 were two different people neither of whom was Chris Anderson – yet it never denied that the Defendant Catino was or is wrong about the two other people playing "switch" as CW-1 (supra), and let me add yet another CW-1 (the third one that the Government used in their affidavits, the Government claims that in 2007-08 it received information from its CW-1 that John Yerinides was selling

drugs and that their CW-1 could make buys from him. Thereafter their CI set up Mr. Yerinides and had him arrested. The identity of this CW-1 was and is none other than Mr. Yerinides' sister-in-law and NOT CW-1 (Ted Lee) or CW-1 (Sammy Attica a/k/a "Sammy The Egyptian") but yet in open court in front of this Court AUSA Richards claims back in November 2013 that "the Government would like to state in contradiction to the Defendant Catino's claims in his motion: CW-1 is still the very same CW-1 in this case and CW-2 is still the very same CW-2 in this case, and CW-3 is still the very same CW-3 in this case"! Ms. Richards, either you have been hoodwinked by your own witnesses, or …? And also, let us "hear" the four recordings in regards to the Government's claims that Mr. Zografidis made four (4) sales with one of the two CW-3s you have, "Demitri Karipidis" for I am enclosing as an exhibit, a phone call from Europe in which Mr. Karipidis states he never "wore" a wire against Mr. Zografidis, and two, including as well, is an affidavit from Mr. Zografidis atteseting to the fact that he "ever sold drugs" to Mr. Karipidis – this, if true, would put Det. Cisero in another problematic position (see Exhibits in Exhibit B herein attached).

(3) Next, in page 3 of the Government's reply, and specifically, in regard to the person named "Joe Dimyan", who the Government now claims "he was not co-defendant Zografidis' attorney ever, and whether or not his testimony should be considered privileged. The Defendant Catino is enclosing exhibits in the form of letters, checks and lease contracts prepared by him. Surely the Government agents should have brought this fact the attention of Government attorneys who the police and DEA agents started to use this person at the end of 2010 as their CW-2 in this investigation.

Morever, this person's credibility was and it worth ZERO when one also consider the fact that according to Det. Cisero's version: Mr. Dimyan walked in off the street, into the Norwalk Police Department, and voluntary wished to be an informant in order to help a third party "see Cisero's February 7-8 affidavits in regard hereto) but, and it a discovery application and responses to by the Government, Ms. Richards revealed that this Mr. Dimyan was being "paid" for his services. Also, and very noteworthy is the fact that Mr. Zografidis has Mr. Dimyan and a Mr. Yoga in a civil suit as trying to steal his bar and restaurant during this time period?!? And consider the fact that since August 2011 up until the first wiretap in February 2012, "Sammy The Egyptian" ("CW-1(a)" as I call him) was either finished as a CW in this case because, just like their other CW – CW-3 – he too got "snared" for double-dipping on the DEA and his now in federal prison. (Last known name and address was" Sameh Attica, Stamford, CT (the full address known to the undersigned). My question is" did Det. Cisero every and at any time inform the Court in regard to the first wiretap application or Mr. Zografidis that their CW-1 went bad on them before getting any wiretaps in this case?

(4) On Page 5, paragraph one, of the Government's response, Ms. Richards appears to be saying in one breath that maybe CW-3 never made any controlled buys of 6 to 28 grams of cocaine from Mr. Zograifidis in this case, and in another, that law enforcement's behavior may have fabricated this information or that the recorded controlled purchases did not occur. This issue has now been "ripened" for consideration due to the exhibits now presented upon this claim. Mr. Zograifidis does deny the Government's claims and backs it up with his affidavits and other exhibits under cover of Exhibit B. Let us also keep in mind the phone call from Europe to

America between Mr. Karipidis and Mr. Papachristou, in which call Mr. Karipidis denies ever wearing a body tape of any kind against Mr. Zografidis.

Now, and in regard to the above conversation it was and is Det. Cisero who makes these claims about recordings and drug deals. The questions that come to the forefront in this Defendant's mind are:

(a) How were these recordings made if, as Mr. Karipidis claims, he never wore a body tape on these four occasions with Mr. Zografidis?

(b) Mr. Zografidis has heard these alleged tapes, and declares that there are no drug sales at all going on?

(c) It was Mr. Zografidis' lawyer, who has come into Wyatt prison, to let Mr. Zografidis hear these tapes. And on that occasion, his lawyer told Mr. Zografidis that he, himself, also spoke with Mr. Karipidis on the telephone. If all is proven – at a hearing – then all this also must fall on Det. Cisero's shoulders as well, because it is his affidavit that makes these statements about these calls and drugs sales, etc.

All of which bring us back to the hearing date on this and other issues before the Court on July 14, 2015. On that day this Court allowed the Defendant Catino to make his own presentation on the issues. And, after a long and considerate discourse, the Court was clearly and certainly of the mind to grant the Franks hearing requested until a tremendous wake of opposition was heard by the Government because of the fact that (1) they did not wish to bring in their detectives and agents to testify, (2) that their 14 defenders in this case – of which most are home already and only two have standing on this motion and that this case is over three years already and that the Court should let the Second Circuit handle this matter, and (3) to go

on and deny this motion and get these person sentenced without considering the merits of Catino's motions is unfair. It is just a hard-nosed effort on the Government's part to stop any consideration of a hearing and the Court corrected its words on how it must decide the motion – "it was inclined to grant the <u>Franks</u> motion at this time" – by then saying that the parties should be allowed to further submit argument to the Court in order to rule on the question of whether a <u>Franks</u> hearing will be permitted.

## **CASE LAW**

It has been held that "a defendant could challenge a facially valid affidavit by making a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. Where the Defendant makes such a showing, the Fourth Amendment to the United States Constitution requires that a hearing be held at the Defendant's request. In the Ninth Circuit case of <u>United States v. Stanert</u>, 762 F.2d 775 (9th Cir 1985), the following quote is extremely relevant:

> A confidential informant had identified Stanert as an individual who was allegedly manufacturing cocaine. "To credit a confidential source's information in making a probable cause determination, the affidavit should support an inference that the source was trustworthy and that the source's accusation of criminal activity was made on the basis of information obtained in a reliable way." United States v. Landis, [726 F.2d 540](#), 543 (9th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984). Although the tip in this case came from an informant who had demonstrated reliability, the information reported represents a bare conclusion which fails to reveal the informant's basis of knowledge, i.e., whether the informant was relying on something more substantial than casual rumor. In addition, the statement does not purport to reveal the location of the alleged laboratory and certainly does not locate it at 2476 Newcastle Drive.

The above quote demonstrates precisely the state of affairs with Det. Cicero's CWs in our case (see February 7, 2012 affidavit for the wiretap). His CW-1's were being switched for strategy reasons (the making of the affidavits) and his CW-2 was used without any real content to the meaning of his words or deeds to Det. Cisero, just like what has been stated in Stanert. Plain and simple, CW-1(a) and CW-2 were never shown to be credible with proof of past performance.

On the issue of switching informants, in the matter of United States v. Simpson, 813 F.2d 1462 (9th Cir 1987) the Court stated in part the following:

> Given the affidavit's emphasis on Simpson's insulation from potential informants to justify the need for wiretapping, Judge Hatter found particularly misleading the affidavit's failure to disclose the true depth of Miller's involvement in Simpson's activities. The affidavit "portrayed Helen Miller as an innocent, uninvolved eavesdropper to Darrel Simpson's activities," thus obscuring the fact that she "was deeply involved." Wiretap Findings, at 4. Moreover, the affidavit "created the illusion that Source Two and Individual A were different people," when in fact both were Helen Miller, and Ross' failure to so inform the reviewing judge "reflects a conscious effort to mislead." Id. Finally, the affidavit failed to report that within two months of meeting Simpson Miller had twice arranged for him to sell heroin to undercover agents and had also introduced him to Agent Hamer. Id. at 5. Because of these material misrepresentations and omissions, Judge Hatter found that the affidavit "was not a complete statement as required by Title 18 United States Code, Section 2518(1)(b)(i)" and that "the omissions create the illusion of necessity for the wiretap." Wiretap Findings, at 4-5. He concluded that the affidavit, when corrected for the misleading statements and omissions, failed to establish the necessity of wiretapping as required by law. See generally United States v. Ippolito, 774 F.2d 1482, 1487 (9th Cir.1985).

In a reading of the above cited opinion does it not fall on all fours with the facts of the Defendant Catino's case in regard to "switching the CWs" as they did. And, further destroy the credibility of Det. Cisero as well. For we must remember what the Court had to say in the case of United States v. Tufaro, 593 F.Supp. 476 (S.D.N.Y. 1983) when considering the responsibility of a "case agent" in a case. There was a discussion in that case in regard to an

agent's knowledge of "whether or not he knew of a Source B" in his investigation and what Agent Liberatore left out serious facts about the "Source B" from his affidavit of facts in regard to the wiretap.  The Court felt that even though Agent Liberatore had no knowledge of "Source B", it was no excuse.  For what Liberatore may not have known was obviously within the knowledge of the agent who, under Liberatore's supervision, was responsible for Source B's activities; and as Franks makes clear, it was Liberatore's obligation to ascertain and present the issue judge all facts concerning the informant's reliability that may have been within the knowledge of agents under his supervision.  Id. at 486.

And, in United States v. Kiser, 716 F.2d 1268 (9th Cir 1983), the Court of Appeals in the 9th Circuit reversed and remanded for a hearing when it ruled that the defendant was entitled to a Franks hearing after he had made a "threshold substantial showing of falsehood" (see 7 page exhibit A "Catino's traverse", along with a copy of the Yerinides affidavit also under exhibit A).  The Catino Traverse over two years ago – along – tried to expose Det. Cisero but had to wait until he received the affidavits herein.  It is respectfully submitted that the only way to resolve the issues involved herein is by holding a Franks hearing.

### In Regards To Issues 2 and 3 In The Defendant's Petition
### Submitted Prior Thereto

Seeing as the Government has totally failed to respond to the issue of a "hearsay indictment", and on the issue of the "non-identification of the Defendant before the grand jury" in this matter, a dismissal of the herein indictment is requested.  Furthermore, seeing as the Government, likewise, has refused to answer the issue of the "sealing TT-1" and the chain of command for the handling of the tape for the 30 days that there is a black hole for from

March 9, 2012 to April 9, 2012, the Defendant now asks for an order suppressing said tape and its contents.[1]

The Defendant Catino moves for the dismissal of the Indictment herein for a failure to identify him "as the person on the telephone in the grand jury proceedings without any other from the identification being conducted; second, the indictment should be dismissed for the extensive use of hearsay by the grand jury without informing it of its use and for violation of the Court's decisions in <u>United States v. Messina</u>, 388 F.2d 393, 394 n.1 (2d Cir 1968); <u>United States v. Estepa</u>, 471 F.2d 1132 (2d Cir 1972); and <u>United States v. Gallo</u>, 394 F.Supp. 310 (D. Conn. 1975).

WHEREFORE, it is requested that his Motions be granted.

                                      RESPECTFULLY SUBMITTED,
                                      ALFRED CATINO

Dated: July 21, 2015        By: _____
                                      FRANK J. RICCIO II
                                      LAW OFFICES FRANK J. RICCIO LLC
                                      923 EAST MAIN STREET
                                      P.O. BOX 491
                                      BRIDGEPORT CT 06601-0491
                                      Fed Bar #CT 20980
                                      (203) 333-6135 (phone)
                                      (203) 333-6190 (fax)
                                      fricciojd@aol.com (email)
                                      www.ricciolaw.com (site)

---

[1] The Defendant Catino is enclosing exhibits under "Exhibit C" to enlighten the Court on this issue of the delay in the saling of the TT-1 tape. The Court has for its consideration: (1) sealing order for the sealing of text messages on TT-1 (646-548-6154) dated March 9, 2012; (2) a sealing order to deal the TT-1 tape dated March 9, 2012, and (3) the one month later order for sealing of all TT-1 tapes; (4) is a DEA form 6, dated April 24, 2012 by Det. Cisero in regard to the April 9, 2012 sealing of TT-1, TT-2 and TT-3 tapes and the careless handling of these tapes also.

**CERTIFICATION**

I hereby certify that on July 21, 2015, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: _____
FRANK J. RICCIO II
LAW OFFICES FRANK J. RICCIO LLC